ROTTENBERG LIPMAN RICH, P.C.
Mark M. Rottenberg, Esq. (MR-6491)
Park 80 West, Plaza One
Saddle Brook, New Jersey 07663
(201) 490-2022
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

------------------------------------------------------------------ X
                                    :

FIRST MONTAUK FINANCIAL CORP.,              Case No.

                       Plaintiff,       :

      -against-                    :

EDWARD H. OKUN, FMFG OWNERSHIP, INC.,   :
FMFG OWNERSHIP II, INC., and INVESTMENT
PROPERTIES OF AMERICA, LLC,          :        **COMPLAINT**

                                    :        Jury Trial Requested
                                    :

                  Defendants.      :

------------------------------------------------------------------ X

       Plaintiff First Montauk Financial Corporation ("First Montauk" or "Company"),

as and for its Complaint against Defendants Edward H. Okun, FMFG Ownership, Inc.

("FMFG"), FMFG Ownership II, Inc. ("FMFG II"), and Investment Properties Of America, LLC

("IPofA," and together with FMFG and FMFG II, the "Okun Entities") (collectively,

"Defendants"), respectfully alleges, upon knowledge as to itself and its own acts and otherwise

upon information and belief, as follows:

## NATURE OF THE ACTION

      1.     This action arises out of the improper attempts of Edward H. Okun ("Okun") – on

behalf of himself and all of the Okun Entities for which he acts as the "sole member" and 100%

owner – to obtain control of First Montauk and its Board of Directors (the "Board") through, inter alia, false, misleading and incomplete public statements.  Defendants have violated Section 13(d) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. § 78m(d)), and the rules of the Securities and Exchange Commission ("SEC") promulgated thereunder, which set forth the disclosure obligations that apply to persons having beneficial ownership of more than five percent of an issuer's registered equity securities and the solicitation of proxies, so as to provide shareholders and the investing public with full and accurate disclosure of relevant and material information concerning large shareholders.

2.      Okun, through his control over the Okun Entities, has embarked upon a course of action that has misled First Montauk shareholders and the investing public, so as to further his own end goals of gaining control of First Montauk and squeezing out its minority shareholders at an inadequate price, and thereby gaining access to its assets at a time when he and the Okun Entities are in the midst of a spiraling liquidity crisis that already has resulted in bankruptcy filings by a half-dozen of his controlled affiliates.  As part of their scheme, Defendants filed a false and misleading Schedule 13D (the "Original 13D") and subsequent false and misleading Schedules 13D/A (collectively referred to as the "13D Amendments").  These filings contain numerous false statements and fail to disclose material information that was required to be disclosed.

3.      Defendants first announced Okun's beneficial ownership of First Montauk securities in the Original 13D filed on June 26, 2006 (attached hereto as Exhibit ("Ex.") 1).  As of June 13, 2006, FMFG owned 24.6% of First Montauk's outstanding common stock. Thereafter, Defendants filed four 13D Amendments between June 2006 and February 2007.  See Schedule 13D/A, filed with the SEC on June 27, 2006 (Ex. 2); Schedule 13D/A, filed with the

SEC on July 13, 2006 (Ex. 3); Schedule 13D/A, filed with the SEC on July 19, 2006 (Ex. 4); and Schedule 13D/A, filed with the SEC on February 23, 2007 (Ex. 5). On July 7, 2006, the SEC notified counsel for Defendants that they had not timely filed their Original 13D, among other things. Defendants responded to the SEC's inquiry on July 13, 2006. See July 13, 2006 Letter to the SEC (attached hereto as Ex. 6). Defendants' stake in First Montauk remained at approximately 25% until February 23, 2007, when FMFG II purchased a large block of additional shares at a price of $1 per share, raising their total ownership to 52.8%.

4.      The Original 13D and all of the 13D Amendments are materially false and misleading, in violation of Section 13(d) and the rules promulgated thereunder. On May 21, 2007, counsel for First Montauk informed counsel for Defendants that their Schedule 13D was inaccurate and inconsistent with a submission Defendants had recently made to the NASD in which Okun stated that the funds that FMFG and FMFG II used to acquire their First Montauk stock were borrowed from IPofA. The 13D filings, by contrast, stated that the funds were "personal."

5.      IPofA itself has admitted both that it "borrowed" over $150 million of customer funds from The 1031 Tax Group, LLC ("1031 Tax Group"), another entity wholly-owned and controlled by Okun, and that it is unable to repay those funds. That failure led to the bankruptcy filing of the 1031 Tax Group.

6.      IPofA is now the focus of a criminal investigation, and the subject of complaints by numerous customers of the 1031 Tax Group, as well as a U.S. Trustee.

7.      Defendants' in-house counsel, Richard B. Simring, stated that he would consult with Okun's corporate counsel and amend the 13Ds if they were inaccurate. However, no amendment has been filed.

8.      As a result of Okun's and the Okun Entities' unlawful attempts to gain control of First Montauk through the use of false and misleading public statements, First Montauk and its shareholders have suffered irreparable injury, for which there is no adequate remedy at law. Moreover, as long as the 13D Amendments remain uncorrected, First Montauk and its shareholders will continue to suffer irreparable injury for which there is no adequate remedy at law. Accordingly, First Montauk brings this action seeking, inter alia: (i) a declaration that Defendants' conduct violates Section 13(d) of the Exchange Act and the rules promulgated thereunder, (ii) an order that Defendants immediately amend the 13D Amendments to correct any false and misleading or incomplete statements, and (iii) injunctive relief preventing Defendants from taking further actions to purchase or sell First Montauk securities, or vote their shares of First Montauk stock, prior to making the accurate and complete amendments and disclosures required by Section 13(d) of the Exchange Act and the rules promulgated thereunder and until a reasonable period of time, not less than 30 days, after Defendants have filed such an amended Schedule 13D.

## THE PARTIES

9.      **First Montauk.** Plaintiff First Montauk, whose common stock is registered under the Securities Act of 1933 and is traded on the Over-The-Counter Exchange, wholly owns First Montauk Securities Corp. ("FMSC"), a registered broker-dealer. FMSC is regulated by both the National Association of Securities Dealers (the "NASD") and the SEC. Violations of the rules of the NASD and the SEC can be punishable by revocation of FMSC's broker-dealer license. Such revocation would shut down FMSC. Accordingly, any transfer of control of First Montauk cannot take place without approval of the governing self-regulatory organizations, which include the NASD. As a registered broker-dealer, FMSC is entrusted with holding and

investing millions of dollars of customer funds.  FMSC has approximately $3 billion in customer

funds under management, of which $250 million is held in cash.

10.     **Okun.**  Defendant Okun, through FMFG and FMFG II, currently beneficially

owns 52.8% of First Montauk's outstanding common stock.  Okun's primary business is real

estate investments.  In addition to serving as the "sole director and president" of each FMFG and

FMFG II, Okun also owns and controls IPofA.  See Exs. 1-5.  As a result, Okun's actions are

imputed to all of the Okun Entities that he controls.

11.     Okun is a real estate investor and promoter of what are known as "1031 qualified

intermediary companies":  such companies are formed for the purpose of holding customer

proceeds from the sale of commercial property for brief periods of time (i.e., no longer than 180

days), so that the funds can then be used to purchase a "like kind" property, thereby allowing the

buyer to qualify for a tax exemption under Section 1031 of the Internal Revenue Code.

12.     Okun and various 1031 companies that he owns and controls are currently under a

federal criminal investigation and are the subject of at least three lawsuits and numerous

customer claims in a New York bankruptcy proceeding, a Colorado state court and a customer

class action in California, all alleging that IPofA looted tens of millions of dollars of customer

funds, which were required to be held by the 1031 companies in FDIC insured bank accounts

and not loaned out for long-term investments.

13.     On April 27, 2007, Okun's offices in Richmond, Virginia were raided by the U.S.

Postal Inspector pursuant to a search warrant issued in connection with a criminal investigation

by the United States Attorney's Office for the Eastern District of Virginia into the disappearance

of over $150 million of customer funds.  These funds were being held by Okun's wholly-owned

real estate investment companies, including the 1031 Tax Group, which served as qualified

intermediaries in connection with their customers' "tax free exchanges," so that the customers'
transactions would be exempt from taxation under Section 1031 of the Internal Revenue Code.

14.     On May 14, 2007, the 1031 Tax Group and several affiliated Okun-controlled
entities filed for chapter 11 protection in the United States Bankruptcy Court for the Southern
District of New York. In re The 1031 Tax Group, LLC, et al., Case No. 07-11448 (S.D.N.Y.).

15.     The question of whether the funds used by Defendants to purchase First Montauk
stock were looted from customers' 1031 accounts is likely to be the subject of discovery in the
1031 Tax Group bankruptcy proceeding, where hundreds of 1031 exchange customers, as well as
the U.S. Trustee, are seeking to discover what assets IPofA purchased with the missing customer
funds.

16.     **The Okun Entities.**  Each of Defendants FMFG and FMFG II is a Delaware
corporation, formed for the sole purpose of acquiring First Montauk stock.  Okun is the sole
owner and director of each of FMFG and FMFG II.  See Exs. 1-5.  Upon information and belief,
a substantial portion of the funds used by FMFG and FMFG II to acquire First Montauk stock
were "borrowed" from IPofA, another entity owned and controlled by Okun, whose assets are
now at the center of the 1031 Tax Group's chapter 11 case.

17.     FMFG and FMFG II are shell companies, with no assets other than First Montauk
stock.

18.     Further, while the FMFG entities claimed in their 13D filings that they used
Okun's "personal funds" to purchase First Montauk stock, this assertion is contradicted by
Okun's counsel's recent admission in response to a question by the NASD that the funds were
"borrowed" from IPofA – the same company which is alleged to have looted over $150 million

of customer funds and that admittedly cannot repay those funds today because it claims to have used them for unidentified long-term investments.

19.     Contrary to the 13D filings, Okun's representations in the NASD application state that the funds used to purchase First Montauk stock are reflected as "intercompany loans" on the books of the Okun Entities.  Upon information and belief, some of those looted funds were used to purchase First Montauk stock, a fact which Okun sought to conceal from the public in his Original 13D and 13D Amendments.

20.     **IPofA.**  Defendant IPofA is wholly-owned and controlled by Okun. According to its website, www.ipofa.com – which was dismantled immediately after the 1031 Tax Group's chapter 11 filing – IPofA is "a full-service real estate investment and management company, which acquires, owns, and operates properties, primarily leased to major national and regional retail tenants under net leases."

21.     Upon information and belief, IPofA has been used by Okun as a conduit for him to access 1031 exchange customers' funds, which were apparently commingled with funds derived from other Okun Entities, for use other than in connection with their customers' 1031 exchanges.

22.     In a lawsuit filed by 1031 investors in a Colorado state court on May 4, 2007 against the 1031 Tax Group and others, captioned Colorado Capital Bank v. Investment Exchange Group, LLC, et al., Case No. 07-cv-4352 (Colo. Dist. Ct.), D. Sean Velarde, an attorney for former officers of the 1031 Tax Group, filed an affidavit attesting that Richard B. Simring, Defendants' in-house counsel, had stated to Velarde that Okun "had treated customer 1031 exchange funds on deposit with the 1031 Tax Group … as his 'personal candy store.'"  See Affidavit of D. Sean Velarde, filed on May 10, 2007 (attached hereto as Ex. 7).

23.     Upon information and belief, Defendants commingled the 1031 Tax Group's assets with IPofA assets and IPofA "borrowed" tens (if not hundreds) of millions of dollars from 1031 Tax Group, including funds that were used by FMFG and FMFG II to purchase First Montauk stock.

## JURISDICTION AND VENUE

24.     The claims asserted herein arise under Section 13(d), 15 U.S.C. § 78m(d), of the Exchange Act and the rules and regulations of the SEC promulgated thereunder.  Accordingly, this Court has federal question jurisdiction over the action pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1331.

25.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 78aa.  The claims asserted herein arose in this District, and one or more of the acts and transactions complained of have occurred, are occurring, and unless enjoined, will continue to occur in this District.

26.     This Court has personal jurisdiction over Defendants because Defendants transact business within the State of New Jersey, and the acts giving rise to this lawsuit occurred in New Jersey.

27.     There is an actual controversy between the parties as to which declaratory judgment is appropriate.

## FACTUAL ALLEGATIONS

### A.     The Merger Agreement And Due Diligence

28.     In February 2006, Okun began discussing with First Montauk an acquisition of First Montauk.  On May 5, 2006, after Okun completed due diligence, First Montauk and Okun, through FMFG and another shell Okun-owned and controlled entity, FMFG AcquisitionCo., Inc., signed the Merger Agreement under which Okun agreed to purchase all of First Montauk's

capital stock for $1 per share. Since FMFG was a shell company, Okun was required to deposit $2 million in escrow with Signature Bank to secure FMFG's obligations. This amount remains on deposit. A special committee of the Board and the full Board approved the Merger Agreement on April 20, 2006.

29.     In June 2006, to ensure that First Montauk's shareholders would vote to approve the proposed transaction, Okun (through FMFG) purchased approximately 24.6% of First Montauk common stock, assuming the conversion of convertible debentures into shares of common stock and that no shares of Series A Preferred Stock are converted into common stock. FMFG also purchased a majority of the Company's Series A Preferred Stock since the approval of the Series A holders voting as a separate class was also required for the merger.

30.     On August 17, 2006, First Montauk conducted a special meeting of shareholders at which FMFG voted all of its shares in favor of the merger. The shareholders overwhelmingly approved the merger and the parties proceeded to move under NASD Rule 1017 for regulatory approval by the NASD of FMSC's change of control. The NASD never approved the merger, however, due to the Okun Entities' failure to provide the NASD with certain information required and repeatedly requested by the NASD, including, but not limited to, the source funds used by FMFG and FMFG II to purchase First Montauk stock.

31.     In connection with the negotiation of the Merger Agreement, the Okun Entities were represented by experienced outside counsel, Kutak Rock LLP, who conducted extensive due diligence at First Montauk: they had unfettered access to First Montauk's books and records beginning in March 2006. At no time did Okun claim that there was a discrepancy or inaccuracy between any of the tens of thousands of pages of documents that were reviewed and what he had been told.

32.    In December 2006, however, Okun terminated Kutak Rock and retained Kluger Peretz Kaplan & Berlin, a law firm based in Florida.  Shortly thereafter, Okun's new counsel claimed for the first time (without explanation) that a change of First Montauk's material conditions had occurred and that First Montauk had breached the Merger Agreement.

33.    Not coincidentally, by December 2006, Okun was still unable to secure financing to acquire First Montauk for $23 million, even after two extensions of the closing date.  Also in December 2006, Okun began to experience a liquidity crisis, as explained by the Chief Restructuring Officer in the 1031 Tax Group chapter 11 proceedings and the U.S. Trustee.  See Declaration of James M. Lukenda, CIRA, as Chief Restructuring Officer (A) In Support of Relief Requested in First Day Motions and Applications and (B) Pursuant to Local Bankruptcy Rule 1007-2, dated May 13, 2007 ("Lukenda Aff."), at ¶ 18 (attached hereto as Ex. 8); see also Memorandum of Law in Support of the United States Trustee's Motion for Order Directing the Appointment of a Chapter 11 Trustee or, in the Alternative, Conversion of the Cases to Chapter 7, dated May 29, 2007 (the "Trustee Motion") (attached hereto as Ex. 9).

34.    On December 29, 2006, Okun purported to terminate unilaterally the Merger Agreement and demanded that First Montauk return the $2 million deposit held in escrow.

**B.    Okun's Litigation Tactics**

35.    On January 8, 2007, in response to Okun's wrongful termination of the Merger Agreement and his refusal to close the transaction, First Montauk filed an action in New Jersey state court (the "State Court Action") against Okun, FMFG, IPofA and affiliated entities for breach of contract, under the caption First Montauk Financial Corp. v. Okun, et al., Case. No. C-07-07 (Ch. Div.).  In its complaint (attached hereto as Ex. 10), First Montauk alleges, among other things, that Okun unlawfully terminated the Merger Agreement because he could not obtain the necessary financing to purchase, at $1 per share, the approximately 23 million

outstanding shares of First Montauk stock that he did not already beneficially own, and, as a result, he intentionally failed to comply with applicable NASD regulations requiring the disclosure of certain financial information by the Okun Entities as a pre-condition to the closing of the transaction.  See Ex. 10, at ¶¶ 4, 7, 76.

36.     After First Montauk filed the State Court Action, Okun and FMFG filed two retaliatory actions, one in Florida state court (the "Florida Action"), and the other in this Court.

37.     More specifically, on February 2, 2007, Okun (through FMFG) retaliated against First Montauk by filing the Florida Action against First Montauk's CEO, Victor K. Kurylak, under the caption FMFG Ownership, Inc. v. Kurylak, Case No. 07-03169CA31 (Fla. Cir. Ct.), for alleged violations of the federal and state securities laws.  First Montauk moved to dismiss or, in the alternative, stay the Florida Action pending resolution of the State Court Action.  The motion is sub judice.

38.     On February 10, 2007, a week after the filing the Florida Action, Okun and FMFG filed a purported derivative action in this Court, under the caption FMFG Ownership Inc. v. Kurylak, et al., Case No. 07-cv-00725 (D.N.J.) (the "Derivative Action"), purportedly on behalf of First Montauk against its Board of Directors, for breach of fiduciary duty and mismanagement in connection with the Merger Agreement.

39.     On April 10, 2007 and May 3, 2007, the parties and court in the State Court Action conducted full day settlement negotiations, which culminated in a settlement agreement. Hon. Alexander D. Lehrer, P.J., who presided over the settlement negotiations, contacted this Court (Judge Garrett E. Brown) to notify it that the parties had reached a settlement agreement which remained subject to this Court's approval.

40.     After First Montauk issued a press release describing the settlement, it was contacted by FMSC brokers who advised it that they had recently learned through media reports that Okun was the subject of a criminal investigation and that a Colorado bank had recently filed an interpleader action in Colorado state court seeking a declaration as to the rightful owner of certain remaining 1031 customer funds.  After investigating the facts that were known to the Okun Entities, but unknown to First Montauk and the Court at the time of the settlement, First Montauk promptly moved in the State Court Action to vacate and set aside the settlement on the grounds that it was the product of fraudulent inducement.  By consent order dated May 21, 2007 (the "Consent Order"), Judge Lehrer vacated the settlement.

**C.     Okun Continues To Acquire First Montauk Stock**

41.     Despite having defaulted on his obligations under the Merger Agreement and contrary to Defendants' allegations in the Derivative Action and the State Court Action that First Montauk's representatives fraudulently concealed the true financial condition of the Company, Okun continued to purchase First Montauk stock until it increased his total beneficial holdings to approximately 52%.  Okun's goal was to seize voting control over the Company at its upcoming annual meeting, at which Okun seeks to elect four new directors to the Company's six-member Board.  Indeed, despite alleging in his counterclaim in the State Court Action that the stock price was "inflated" by virtue of the Company's supposed misrepresentations and omissions, Okun certified in his February 23, 2007 Schedule 13D/A (Ex. 5) that First Montauk stock was "undervalued" and that this was his reason for purchasing another large block of stock.  Either Okun's statement in the 13D is false, or his pleadings in the Derivative Action and the State Court Action about the value of the Company being fraudulently inflated are false.

**D.      Okun Attempts To Gain Control Of The Board**

42.      On March 20, 2007, Okun, FMFG and FMFG II attempted to nominate four directors to First Montauk's Board at a shareholder meeting that was originally scheduled for June 22, 2007.  The First Montauk Board is staggered:  four out of six directors will stand for election in 2007.  Although Okun was well aware of the Company's Amended and Restated By-Laws (the "By-Laws") and the notice requirements (as he had served notice of the nominations more than 90 days in advance of the anniversary of the last annual meeting), his purported notice did not even attempt to comply with these requirements.  Okun's original notice omits critical information required by the SEC's proxy rules and does not even include the simple consent of the nominees.  Among the critical, mandatory information Okun omitted to provide timely is:

> (a)      A description of all arrangements or understandings between the shareholder and each nominee and any other person or persons (naming such person or persons) pursuant to which the nomination or nominations are to be made by the shareholder;

> (b)      Information regarding each nominee proposed by such shareholder as would be required to be included in a proxy statement filed pursuant to the proxy rules of the SEC; and

> (c)      The consent of each nominee to serve as a director of the Company if so elected.

43.      The By-Laws provide that the presiding officer of the meeting may refuse to acknowledge the nomination of any person not made in compliance with the foregoing procedure.  Further, certain of this information is mandated not just by the By-Laws, but by the SEC.  The information required under the By-Laws must be submitted to First Montauk at least 90 days prior to the anniversary date of last annual meeting (i.e., by March 25, 2007, since the calendar date of the last annual meeting was June 23, 2005).  It was not timely provided.

44.     On April 10 and May 3, 2007 after First Montauk's annual meeting was scheduled, Hon. Alexander D. Lehrer, P.J., presiding over the State Court Action, conducted extensive settlement negotiations with the parties, which resulted in a settlement agreement that was approved by Judge Lehrer on May 5, 2007 (the "Settlement").

45.     As a condition to entering into the Settlement, the parties agreed that the June 22, 2007 annual meeting would be adjourned pending this Court's approval of the Settlement and dismissal of the Derivative Action.  First Montauk further conditioned the Settlement on approval by the NASD.

46.     On May 17, 2007, First Montauk moved to vacate the Settlement after it learned from its brokers that Okun and his counsel had concealed from First Montauk and the Court that he and certain of his controlled entities were the target of an ongoing criminal investigation and that Okun had placed over a dozen of his controlled companies into bankruptcy, where he is defending claims by hundreds of 1031 customers whose funds Okun's 1031 companies were required to return within 180 days.  The funds have disappeared.

47.     On May 21, 2007 the court in the State Court Action issued the Consent Order vacating and setting aside the Settlement (attached hereto as Ex. 11).

48.     Promptly thereafter, First Montauk rescheduled its annual shareholders' meeting for July 12, 2007.

### E.     Defendants' False And Misleading 13D Filings

49.     As reflected in the Original 13D filed by certain Defendants on June 26, 2006, and the 13D Amendments, each of the Defendants is a member of a group that beneficially owns in excess of five percent of First Montauk's common stock.  Defendants Okun and FMFG have been members of this group since the filing of the Original 13D.  However, despite its indirect

beneficial ownership interest in First Montauk stock, Defendant IPofA is not identified as a member of the 13D Group and has not filed a Schedule 13D.

50.     On July 13, 2006, the SEC informed Okun and FMFG that it had a series of questions concerning their Original 13D filing, including why the 13D had not been filed within ten days of the acquisition of their beneficial ownership of First Montauk stock and thus was untimely. See Ex. 6. Despite the fact that Okun and FMFG had entered into a voting agreement in connection with the stock purchase on May 5, 2006, Okun and FMFG responded to the SEC's inquiry by claiming that they had not acquired their beneficial ownership of First Montauk stock until June 13, 2006, the date as of which they "possessed the right to acquire the subject shares at the time they entered into the voting agreement." Ex. 6. Okun and FMFG conceded, however, that the Original 13D should have been filed within ten days of June 13, 2006, but instead was filed three days late, on June 26, 2006, claiming that the late filing was "an oversight and does not reflect a belief on the part of the filers that the Schedule 13D was not due within 10 days of June 13, 2006." Ex. 6.

51.     **(i) <u>Source of Funds.</u>** Defendants' 13D disclosures are deficient and violate the requirements of Section 13(d) in several respects. Specifically, Defendants have failed to disclose all of the material facts as to the source of funds used to purchase First Montauk stock, including whether such funds were borrowed or siphoned off (directly or indirectly) from 1031 Tax Group funds. In their Original 13D and 13D Amendments, Defendants stated that the source of funds was "Mr. Okun's personal funds." See Exs. 1-5. However, this affirmative representation is contradicted by Defendants' recent admission in connection with the preparation of a NASD Section 1017 application seeking consent for a change of control of FMSC that FMFG and FMFG II "borrowed" millions of dollars from IPofA (which, in turn, has

admitted to "borrowing" millions of dollars from the now-bankrupt 1031 Tax Group). Further, Defendants' use of the symbols "PF" (personal funds) and "AF" (affiliate of the reporting person) to identify the source of funds in the 13D filings is materially false, incomplete and misleading.

52.    **(ii) Purpose of Investment.**   Additionally, Defendants have failed to disclose adequately the purpose of their investment in First Montauk, including, among other things, any plans or proposals that would result in any change in the present Board of Directors or management of First Montauk, or any other material change in First Montauk's or FMSC's business or corporate structure.  In pleadings filed in the State Court Action as early as March 2007, Defendants disclosed their intention to vote their shares from the floor of First Montauk's upcoming annual meeting to eliminate all of the independent directors and elect four new directors affiliated with Okun, as well as Defendants' plans to install a new CEO at First Montauk, and plans to materially change FMSC's business by causing it to enter into a new line of business:  the marketing of real estate securities to Okun's 1031 exchange customers. Defendants were required but failed to amend their Schedule 13D to disclose publicly these plans and proposed changes.  Nor did Defendants amend their 13D to provide information about a consultant to Okun whom Okun stated he would install as the new CEO of First Montauk as soon as he gained control of the company.

53.    **(iii) Acquisition or Disposition of Shares.**  Defendants have also failed to disclose any plans or proposals to acquire additional shares or dispose of shares of First Montauk stock, as required under Section 13(d).  On May 21, 2007, First Montauk learned that Okun was engaged in discussions with a competitor of First Montauk to sell his 52.8% beneficial interest in

First Montauk stock; this offer to sell was a material event that was required to be promptly disclosed under Schedule 13D.

54.     Defendants are also required to disclose the identity and background of the Schedule 13D filers, including the identity of all executive officers and directors of corporate filers.  In their Original 13D and the 13D Amendments, Defendants stated that Okun is "the sole director and president" of FMFG and FMFG II.  See Exs. 1-5.  However, in a certification filed in the State Court Action on March 28, 2007 (attached hereto as Ex. 12 (without accompanying exhibits)), Defendants represented that Richard B. Simring is the "in-house corporate counsel" of FMFG; and in another certification filed on May 23, 2007 (attached hereto as Ex. 13 (without accompanying exhibits)), Defendants represented that Simring is the "General Counsel and Vice President" of FMFG and FMFG II.  In addition, Defendants also omitted to disclose that their proposed director nominees are the sole officers of the 1031 Tax Group and that Okun is the sole member of IPofA.  Defendants have failed to file an amended 13D to disclose the identity of the executive officers and directors of the FMFG entities.

55.     As alleged above, Okun is improperly attempting to use the false and misleading 13D Amendments to obtain control of First Montauk.  As such, each of the 13D Amendments violates Section 13(d) of the Exchange Act and the rules promulgated thereunder.

**Irreparable Harm**

56.     First Montauk seeks a declaration that Defendants were and continue to be in violation of Section 13(d) of the Exchange Act and the rules promulgated thereunder.  In the absence of the preliminary and permanent relief requested herein, First Montauk and its stockholders face the real threat of irreparable harm.

57.     More specifically, unless Defendants are enjoined from (i) voting their shares of First Montauk stock (including at First Montauk's annual shareholders' meeting) until a

reasonable period of time after they have filed accurate and complete amendments and

disclosures required by Section 13(d) of the Exchange Act and Rules 13d-1 and 13d-2

promulgated thereunder, and the Court finds that such amendments and disclosures are true and

complete in all material respects, and (ii) acquiring additional shares or selling shares of First

Montauk stock until a reasonable period of time after they have filed the accurate and complete

amendments and disclosures required by Section 13(d) of the Exchange Act and Rules 13d-1 and

13d-2 promulgated thereunder, and the Court finds that such amendments and disclosures are

true and complete in all material respects, First Montauk's shareholders and the investing public

will be deprived of their right to make a fully-informed decision (including, e.g., whether that

decision involves voting their shares, selling their shares or acquiring additional shares) based on

accurate information with respect to Defendants' financial condition, investment objectives and

intentions concerning First Montauk's business and composition of its Board of Directors and

management team.

58.     Information about the source of the FMFG entities' funds to acquire their First

Montauk stock, and the loans from IPofA that enabled the FMFG entities to purchase the stock,

is particularly material: if these funds were converted by IPofA from the 1031 Tax Group, there

is a risk that the FMFG entities' stock will be seized by the U.S. Trustee (or other creditors) and

that First Montauk may come under the control of a trustee (or creditors) because of Okun's

unlawful acts.  Investors plainly are entitled to know that they are buying into a company that

could come under control of a trustee because a control block of stock was purchased with

converted funds.  The injury to First Montauk outweighs any injury that Defendants might claim

to suffer as a result of the temporary, preliminary and permanent injunctions requested in this

Complaint.  Further, the temporary, preliminary and permanent injunctions sought herein by

First Montauk will serve the public interest by preventing Defendants from continuing to violate

the federal securities laws and regulations and by mandating corrective disclosure.  The resulting

injuries if Defendants are not enjoined cannot be adequately compensated for with money

damages and there is no adequate remedy at law.

## CAUSE OF ACTION

**(Violations of §13(d) of the Exchange Act, 15 U.S.C. § 78m(d),
and Rules 13d-1 and 13d-2 Promulgated Thereunder – False and
Misleading Statements in Defendants' Original 13D and 13D Amendments)**

59.     First Montauk repeats and realleges paragraphs 1 through 58 as if set forth herein.

60.     The purpose of Section 13(d) of the Exchange Act is to permit companies, their

stockholders, and the investing public to (i) be aware of accumulations of blocks of stock in

excess of five percent of the outstanding shares of any equity security, (ii) ascertain the

background of, and other pertinent information (including source of funds) relating to, the

holders of such blocks, and (iii) learn the plans and intentions of the holders of such blocks with

respect to the operations and management of the particular issuer in question, all with a view

toward enabling shareholders and the public to make informed investment decisions as to the

voting, acquisition or disposition of their shares, based upon full disclosure of all relevant

truthful and material information concerning issuers and those in a position to assert control over

them.

61.     Section 13(d)(1) of the Exchange Act and Rule 13d-1, 17 C.F.R. § 240.13d-1,

promulgated thereunder require that the beneficial owner of more than five percent of an issuer's

registered equity securities, file, within ten days after acquiring its securities, a disclosure of

certain information utilizing a Schedule 13D in the form promulgated by the SEC, including,

among other things, the background and identity of all persons by whom or on whose behalf the

purchases are being made, the purpose or purposes of their acquisition of the issuer's stock, their

plans with respect to the issuer, and all contracts, arrangements, understandings or relationships with respect to the securities of the issuer. Based on Defendants' 13D Amendments, each of the Defendants is a member of a group, pursuant to Section 13(d)(3) and Rule 13d-3, 17 C.F.R. § 240.13d-3, promulgated thereunder, that is the beneficial owner of more than five percent of First Montauk's registered equity securities.

62.    Under Section 13(d)(2) of the Exchange Act and Rule 13d-2, 17 C.F.R. § 240.13d-2, promulgated thereunder, if any material change occurs in the facts set forth in the statements to the issuer, and in the statement filed with the SEC, a Section 13(d) filer shall promptly file an amendment to the Schedule 13D. As in the original Section 13(d) filing, all amendments to Schedule 13D must disclose all relevant truthful and material information, and likewise must not contain any omissions and misstatements of material fact.

63.    First Montauk's common stock is registered pursuant to Section 12(g) of the Exchange Act, 15 U.S.C. § 78l, and therefore constitutes an "equity security" for the purposes of Section 13 of the Exchange Act.

64.    As reported in First Montauk's SEC Form 10-Q for the period ending March 31, 2007, as of May 15, 2007, there were 18,526,553 shares of First Montauk common stock outstanding and registered pursuant to Section 12(g) of the Exchange Act.

65.    In connection with Defendants' 13D Amendments, Defendants have intentionally, willfully, negligently and/or with reckless disregard for the truth failed to make required disclosures in a timely manner or at all, made numerous statements which, at the time and in the light of the circumstances under which they were made, were false or misleading with respect to material facts, or which omitted to state material facts necessary in order to both make the

statements therein not false or misleading, and failed to correct statements made in earlier communications which have become false or misleading.

66.     First Montauk and its shareholders generally have suffered and, unless Defendants are enjoined from continuing their unlawful course of conduct, will continue to suffer irreparable injury, for which there is no adequate remedy at law.  The injury to First Montauk and its shareholders outweighs any injury that Defendants might suffer as a result of the preliminary and permanent injunctions requested in this Complaint.  Further, the preliminary and permanent injunctions sought by First Montauk will serve the public interest by preventing Defendants from violating the federal securities laws and regulations.

67.     Accordingly, First Montauk seeks, inter alia, a declaration that Defendants were and continue to be in violation of Section 13(d) of the Exchange Act and Rules 13d-1 and 13d-2 promulgated thereunder, as well as injunctive and other relief as set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE**, First Montauk respectfully requests that the Court enter judgment:

(i) declaring that Defendants have violated and continue to violate Sections 13(d) of the Exchange Act and Rules 13d-1 and 13d-2 promulgated thereunder;

(ii) ordering Defendants to make immediately disclosures to correct the incomplete, false and misleading statements in the Original 13D and 13D Amendments;

(iii) preliminarily and permanently enjoining Defendants (and their agents and employees and all other persons under their supervision or control or otherwise acting in concert with them) from voting their shares of First Montauk stock, including from the floor of First Montauk's annual shareholders' meeting, until a reasonable period of time after they have filed the accurate and complete amendments and disclosures required by Section 13(d) of the

Exchange Act and Rules 13d-1 and 13d-2 promulgated thereunder, and the Court finds that such amendments and disclosures are true and complete in all material respects;

(iv) preliminarily and permanently enjoining Defendants (and their agents and employees and all other persons under their supervision or control or otherwise acting in concert with them) from acquiring additional shares or selling shares of First Montauk stock until a reasonable period of time after they have filed the accurate and complete amendments and disclosures required by Section 13(d) of the Exchange Act and Rules 13d-1 and 13d-2 promulgated thereunder, and the Court finds that such amendments and disclosures are true and complete in all material respects;

(v) declaring that Defendants are not entitled to the reimbursement by First Montauk of expenses that Defendants incur in connection with this contest for corporate control;

(vi) awarding First Montauk actual and compensatory damages in connection with this action in an amount to be determined at trial;

(vii) awarding First Montauk its attorneys' fees, costs, and expenses incurred in connection with this action;

(viii) awarding First Montauk pre-judgment and post-judgment interest; and

(ix) awarding First Montauk such other and further relief that the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all claims and issues set forth herein which are so triable as a matter of right.

Dated:  June 3, 2007

Respectfully submitted,

By: _____

Mark M. Rottenberg (MR-6491)
ROTTENBERG LIPMAN RICH, P.C.
Park 80 West, Plaza One
Saddle Brook, NJ  07633
Tel.:  (201) 490-2022
Fax:  (201) 490-2040

*-- and --*

Irwin H. Warren (IW-1168)
Miranda S. Schiller (MS-9456)
Virginia H. Johnson (VJ-7672)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
Tel.:  (212) 310-8000
Fax: (212) 310-8007

*Counsel for Plaintiff First Montauk Financial
Corporation*

## LOCAL RULE 11.2 CERTIFICATION

I hereby certify that the within action is not the subject matter of any other actions in this Court or any other Court except as follows:  (1) Plaintiff First Montauk Financial Corp. ("First Montauk") is a nominal defendant in a putative derivative action commenced by Defendant FMFG Ownership, Inc. in this Court, purportedly on behalf of First Montauk, pending under the caption FMFG Ownership, Inc. v. Kurylak, et al., Case No. 07-cv-00725, alleging breach of fiduciary duty and mismanagement by its management and Board of Directors; (2) Defendants Edward H. Okun, FMFG Ownership, Inc., and Investment Properties of America, LLC, among others, are defendants in an action brought by Plaintiff First Montauk in the Superior Court of New Jersey, Chancery Division, Monmouth County, pending under the caption First Montauk Financial Corp. v. Okun, et al., Docket No. 07-07, for claims arising out defendants' breach of a merger agreement; and (3) Defendant FMFG Ownership, Inc. has filed an action against First Montauk's Chief Executive Officer, Victor K. Kurylak, in the Circuit Court of the 11th Judicial District of Florida, pending under the caption FMFG Ownership, Inc. v. Kurylak, Case No. 07-03169CA31, which was removed to and is pending in the United States District Court for the Southern District of Florida, Miami Division, Case No. 07-cv-20482 (Graham/O'Sullivan), alleging claims for, among other things, alleged violations of the federal and state securities laws.  I further certify that no other action is contemplated and that the matter in controversy is not the subject of any arbitration proceedings.  I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Mark M. Rottenberg

Dated:  June 3, 2007